Filed 2/25/21  P. v. Engelhardt CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>KATHY M. ENGELHARDT,<br><br>　　　Defendant and Appellant. | B302657<br><br>(Los Angeles County<br>Super. Ct. No. BA252814) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael Garcia, Judge.  Affirmed.

　　　David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2005, defendant Kathy M. Engelhardt pled guilty to 10 counts of first degree residential burglary (Pen. Code, § 459), and four counts of receiving stolen property (§ 496, subd. (a)). She fled the country while awaiting sentencing. Fourteen years later, defendant filed a motion to withdraw her plea, arguing she was in an abusive relationship with her codefendant, Dewey Maurice West, and was under duress when she entered her plea. The trial court denied the motion and sentenced defendant to eight years eight months in prison. On appeal, defendant argues the trial court abused its discretion when it denied her motion to withdraw her plea. We affirm.

## BACKGROUND

In March 2004, defendant and Mr. West were charged with 31 felony counts stemming from burglaries committed at open houses (houses for sale open for viewing by potential buyers). An amended complaint was later filed alleging 23 counts. In all, over $300,000 in property was taken.

The jury trial started on February 7, 2005. On February 10, 2005, the trial court asked whether the parties had reached an agreement regarding the disposition of the case. Mr. West was not prepared to enter a plea; he wanted more time to consider the People's offer. Defendant was prepared to enter a plea that same day, and to be sentenced at a later date. The prosecutor was willing to accept defendant's plea and allow Mr. West to proceed to trial.

To ensure defendant appeared for sentencing, it was agreed she would plead guilty to 10 counts of burglary and four counts of receiving stolen property, with the understanding that nine of the burglary counts would be dismissed when she appeared at

2

sentencing. The negotiated disposition was a term of four years in prison.

Defendant and Mr. West were initially represented by lawyers from the same law firm, but defendant was represented by separate counsel when she entered her plea. Defendant's counsel told the court he had discussed the disposition with her "at length." Defendant said she understood the disposition and wished to proceed with the plea. She also said she understood that if she failed to appear for sentencing, she could be sentenced to the maximum sentence for the counts to which she was pleading guilty.

Defendant was placed under oath and admitted she attended open houses with Mr. West between November 2002 and September 2003, she saw Mr. West take items from these houses, he admitted to her that he took items from the houses, and he admitted he sold some of those items. Following the standard plea colloquy and waiver of rights, the court concluded defendant's plea was made "freely and voluntarily."

After defendant entered her plea, Mr. West decided to plead guilty with a negotiated sentence of 15 years four months in prison.

Defendant's sentencing was calendared for March 17, 2005, and she was permitted to remain out of custody on bail until then. She failed to appear at the sentencing hearing, and her bail was forfeited.

Fourteen years later, on April 26, 2019, defendant filed a motion to withdraw her plea on the ground it was "procured through sustained coercion and severe threats of physical violence."

Defendant submitted a declaration in support of the motion, testifying she moved to Los Angeles in 2001 and began dating Mr. West six months later. They quickly moved in together. Mr. West became physically and emotionally abusive. Defendant often fled their shared apartment to stay with friends, and Mr. West would threaten and harass her friends and break into their homes.

Defendant tried to leave Mr. West "countless times" during their two-year relationship. She filed for a temporary restraining order in October 2002 but did not pursue it because she was afraid for her safety.

In 2002, defendant attended open houses with Mr. West, after he suggested they find a larger place to live. She was "excited" about the prospect of moving, and "hopeful" about their relationship. Defendant would "disappear" during the open houses, and she soon noticed items in their apartment that did not belong to them, but she was too afraid to confront Mr. West.

After they were arrested, Mr. West's family posted defendant's bail, took her to Mr. West's mother's house, and did not allow her to leave or speak with anyone for two weeks.

At one point, the district attorney offered defendant a plea deal with a one-year jail sentence in exchange for her cooperation in the prosecution of Mr. West. Defendant refused the deal because she was "deeply fearful for [her] life."

Defendant did not feel she could "defend[] the false charges leveled against [her] for fear of reprisal from [Mr. West] and his family." "It was in this state of fear and coercion from being constantly harassed, stalked, and threatened that [she] eventually decided to plead guilty, accept the false charges

4

leveled against [her] and agree to the unbelievably onerous prison sentence of four years."

After defendant accepted the plea deal, Mr. West's mother called her and threatened "they would 'get [her] in prison.' " Mr. West's mother was angry defendant received a lighter sentence than her son. Before the sentencing hearing, defendant fled the country in fear for her life. Years later, she returned to accept the consequences of her actions.

Defendant's friend, Olivia Fischa, submitted a declaration in support of the motion, testifying Mr. West was abusive and would break into her apartment looking for defendant. During the pendency of the criminal case, defendant ended her relationship with Mr. West. Because of Mr. West's stalking, defendant and Ms. Fischa stayed at Ms. Fischa's mother's house. Mr. West called there repeatedly, demanding to see defendant, and threatening to kill Ms. Fischa if she prevented him from seeing defendant. Ms. Fischa's mother submitted a declaration corroborating that Mr. West left threatening messages.

The trial court denied the motion, after concluding the plea colloquy indicated defendant's plea was freely and voluntarily made. Defendant was sentenced to eight years eight months in prison. She timely appealed and received a certificate of probable cause.

## DISCUSSION

Penal Code section 1018 provides, in pertinent part, "On application of the defendant at any time before judgment . . . , the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

The defendant has the burden to show, by clear and convincing evidence, there is good cause for withdrawal of the

5

guilty plea.  (Pen. Code, § 1018; *People v. Cruz* (1974) 12 Cal.3d 562, 566.)  "To establish good cause to withdraw a guilty plea, the defendant must show . . . that [defendant] was operating under mistake, ignorance, or any other factor overcoming the exercise of . . . free judgment, including inadvertence, fraud, or duress. [Citation.]  The defendant must also show . . . that [she] would not have accepted the plea bargain had it not been for the mistake."  (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416.) A defendant must demonstrate she was pressured into the plea by more than the pressure experienced by "every other defendant faced with serious felony charges and the offer of a plea bargain." (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208.)

"A decision to deny a motion to withdraw a guilty plea ' "rests in the sound discretion of the trial court" ' and is final unless the defendant can show a clear abuse of that discretion. [Citations.]  Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them." (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)  " 'Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged.' "  (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 919.)

Although defendant suffered abuse by her codefendant, she did not testify she was pressured to enter the guilty plea. The threats to "get" defendant in prison were made after she entered her plea.  The plea colloquy showed the plea was made freely and voluntarily, and we see nothing in the record to suggest otherwise.  While the abuse may have influenced her decision to commit the crimes, or flee the country, it was unrelated to her plea.  The role of this court is not to reweigh the evidence, but to determine if the court's ruling has adequate

support in the record.  On this record, we can find no abuse of discretion.

## DISPOSITION

The judgment is affirmed.

GRIMES, Acting P. J.

WE CONCUR:

STRATTON, J.

WILEY, J.